**TOWN OF EUSTIS**

**v.**

**STRATTON–EUSTIS
DEVELOPMENT CORP.**

Supreme Judicial Court of Maine.

Argued Sept. 11, 1986.
Decided Oct. 24, 1986.

Hiscock & Barclay, Frank G. Chapman (orally), Augusta, for plaintiff.

Gross, Minsky, Mogul & Singal, Gnorge Z. Singal (orally), Bangor, for defendant.

Before NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

SCOLNIK, Justice.

The plaintiff, Town of Eustis (Town), appeals from a judgment entered by the Superior Court (Franklin County) after a non-jury trial. The Superior Court ruled that the defendant, Stratton-Eustis Development Corporation (Corporation), does not hold real estate known as "Cathedral Pines" in trust for the Town, but ordered the Corporation to pay "profits" to the Town for timber-cutting operations carried out on the property. On appeal, the Town contends that the Superior Court erred in its conclusion that the Corporation does not hold Cathedral Pines in a constructive trust for the Town and by not ordering a reconveyance of the property. It also contends that the Superior Court should have ordered an accounting of "proceeds" rather than "profits" from the Corporation's timber-cutting on the property.

I.

The Town owned the Cathedral Pines property until May, 1964 at which time it conveyed the property to the Corporation. Income generated from Cathedral Pines was allocated to the Town's School Trust Fund. At a Town meeting held on December 19, 1963, the Town voted to "deed or lease for forty years" the Cathedral Pines property to the Corporation "for the purpose of establishing and maintaining a Tenting and Recreation Area" provided that the Corporation "execute a first option to the Town" to repurchase the property. The Town also voted to reserve "the proceeds from the cutting of timber" on the property to be paid to the Town's School Trust Fund.

A deed was executed and recorded on May 15, 1964 conveying Cathedral Pines to the Corporation. A second deed, recorded in June 30, 1964, changed some of the language of the former deed. The latter deed contains provisions controlling the consideration and repurchase terms of the transaction. The consideration for the property is described in that deed as:

one dollar and other good and valuable considerations, including but not limited to the economic benefits to Inhabitants of the Town of Eustis, through the construction by the grantee of recreational facilities to be located on the premises, with funds to be loaned or insured by the United States of America acting through the Farmers Home Administration, paid by Stratton-Eustis Development Corporation. . . .

The repurchase terms state:

By accepting this deed the Stratton-Eustis Development Corporation covenants and agrees that, should it elect to sell the above described real estate, it will first offer it to the Inhabitants of the Town of Eustis for the sum of one dollar together with an additional sum equal to the appraised value of the improvements to be placed thereon by said Corporation.

Both deeds refer to the Town meeting of December 19, 1963 as authority for the conveyance.[1]

The Town alleges that the sole purpose of this conveyance was the development of recreational facilities on the property through a loan from the United States Farmers Home Administration (FmHA).

---

1. The May 15, 1964 deed states: "This deed is given in accordance with the vote taken at a special town meeting of the Town of Eustis held December 19, 1963." The June 30, 1964 deed states: "For authority to execute this conveyance reference is made to a vote taken at a special town meeting of the Town of Eustis held December 19, 1963. . . ."

Because the Town could not borrow directly from FmHA itself, it claims that the Corporation was formed as a financial conduit to borrow the money and develop the property. The Town argues that the purpose of the transaction was to convey the property only for the period of the loan and that once the loan was repaid, the Corporation was obliged to reconvey Cathedral Pines to the Town. The Town seeks to enforce this alleged obligation through the equitable remedy of a constructive trust.

## II.

■ Initially, we must determine the standard of review for this appeal. The Town did not file a motion with the Superior Court for findings of fact or conclusions of law pursuant to Rule 52(a) of the Maine Rules of Civil Procedure. As a result, we assume that the Superior Court resolved all factual issues necessary to its conclusions in favor of the appellee, the Corporation in this instance. *See e.g., Blackmer v. Williams,* 437 A.2d 858, 861 (Me.1981); *O'Halloran v. Oechslie,* 402 A.2d 67, 69 (Me. 1979). The Superior Court concluded that the Town failed to establish a constructive trust relationship with the Corporation by either a preponderance of the evidence or by clear and convincing evidence. We will not reverse such a conclusion unless the evidence compelled the Superior Court to reach a different result. *See Luce Co. v. Hoefler,* 464 A.2d 213, 215 (Me.1983). With this standard in mind, we turn to a consideration of the Town's arguments.

## III.

Employing the foregoing standard of review, we interpret the Town's position to be that, on the evidence presented, the Superior Court was compelled to impose a constructive trust relationship upon the parties. First, the Town alleges that the Corporation was formed for the sole purpose of borrowing from the FmHA to develop recreational facilities at Cathedral Pines. Second, the Town alleges that the transfer of Cathedral Pines to the Corporation was a mere gift without any valid consideration. Third, the Town alleges that the Town vote of December 19, 1963 only conveyed the property for the term of the loan. Since the Corporation repaid the loan by 1976, the Town contends it was entitled to a reconveyance of the Cathedral Pines property at that time.

■ The Town does not claim that a constructive trust relationship exists here because of fraud or undue influence on the part of the Corporation. Rather, the Town's theory is that a constructive trust exists because it granted Cathedral Pines to the Corporation to hold the property for the Town's benefit. The Town contends that by failing to reconvey the property, the Corporation abused fiduciary obligations. As a result, the Town asks this Court to treat the Corporation as a constructive trustee. Under this theory, there must be clear and convincing evidence of an agreement between the Town and the Corporation to reconvey Cathedral Pines to the Town after the repayment of the FmHA loan. *See Gaulin v. Jones,* 481 A.2d 166, 169 (Me.1984); *Sacre v. Sacre,* 143 Me. 80, 94, 55 A.2d 592, 599 (1947). The burden of proof at trial was on the Town to present such evidence. *Id.* Given the narrow scope of review in this case, we conclude that on the evidence presented by the Town, the Superior Court was not compelled to conclude that the Town met its burden to establish such a trust relationship.

Each of the Town's factual allegations is contradicted by evidence in the record. First, the Corporation's articles of incorporation state that its primary purpose is "to promote increased employment and living standards in the Town." Another purpose of the corporation is "[t]o foster, encourage and assist in the location, settlement and re-settlement of industry, manufacturing and other business enterprises within the Town." Second, the deed of June 30, 1964 describes the consideration for the conveyance as economic benefits derived by the Town from the Corporation's development

of the Cathedral Pines property. Such benefits may constitute valuable consideration. *Cf. City of Rockland v. Anderson,* 85 A. 1066, 110 Me. 272 (1913) (municipal corporation's sale of horse in consideration of purchaser's promise to take good care of horse held valid). *See generally* 56 Am. Jur.2d § 552 at 606 ("...the advantage which will inure to the municipality from a contemplated improvement may constitute a valuable consideration ...").[2] Finally, the deeds executed by the Town convey the Cathedral Pines to the Corporation "forever."[3] The repurchase terms take effect only "should [the Corporation] elect to sell" the property. This language indicates neither a temporary conveyance nor an absolute right of the Town to buy back the property upon repayment of the FmHA loan by the Corporation. Even though the deeds incorporate by reference the Town vote of December 19, 1963, the Town only voted to reserve "a first option" to buy back the property.

Given the evidence before it, the Superior Court was not compelled to conclude that the parties intended the Corporation to hold Cathedral Pines in trust for the Town under any agreement, express or implied. Since the Town was unable to prove the existence of such an agreement by clear and convincing evidence, the Superior Court did not err in concluding that a constructive trust relationship does not exist between the parties with respect to the Cathedral Pines property. *See Sacre v. Sacre,* 143 Me. at 94, 55 A.2d at 599.[4]

■ We now turn to the Town's argument that the Superior Court should have ordered an accounting of "proceeds" owed to the Town by the Corporation from the cutting of timber on the property instead of "profits." The plaintiff argues that the reference in the deeds to the Town meeting of December 19, 1963 requires the Corporation to account for all income, not just profits, derived from timber-cutting at Cathedral Pines. It is true that the Town voted to reserve the "proceeds" from the cutting of timber when it decided to convey the land to the Corporation. The Town, however, provides no evidence on this issue other than the reference to "proceeds" in the record for the Town's meeting of December 19, 1963. On the record before us, we cannot say that the Superior Court order is necessarily inconsistent with the Town's vote.

The entry is:

Judgment affirmed.

All concurring.

---

2. The Town argues further that the Superior Court's description of the Corporation as a "quasi-municipal corporation" was a clearly erroneous finding of fact. The Town argues that, as a result, the Superior Court was precluded from finding the existence of a constructive trust because quasi-municipal corporations enjoy sovereign attributes that would prohibit such a trust relationship in this case. We need not consider the merits of this argument because we cannot determine from the language of the Superior Court's order whether he used the words "quasi-municipal corporation" as a legal term of art. Even if he did, we are unable to ascertain

whether he relied on that finding to reach his decision in this case.

3. The deeds of May 15 and June 30, 1964 each state that the Town "does hearby and *forever* quit-claim unto the ... Corporation, its successors, and Assigns forever, all its right, title and interest in and to the [Cathedral Pines property]" (emphasis added).

4. We note that the Superior Court found that the Town had neither satisfied the clear and convincing standard of proof nor that of the fair preponderance of the evidence.