STATE of Maine

v.

**Richard KNEELAND.**

Supreme Judicial Court of Maine.

Argued Sept. 9, 1988.
Decided Dec. 14, 1988.

---

William R. Anderson, Dist. Atty., Geoffrey Rushlau (orally), Asst. Dist. Atty., Bath, for plaintiff.

Theodore K. Hoch (orally), Day & Hoch, Bath, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

CLIFFORD, Justice.

Based on the evidence gathered at an investigatory stop of his motor vehicle, the defendant, Richard Kneeland, was charged with operating a motor vehicle while under the influence of intoxicating liquor, 29 M.R.S.A. § 1312–B (Supp.1987). Under the provisions of 15 M.R.S.A. § 2115–A, the State of Maine appeals from a order of the District Court (Bath; *Henry, J.*), granting Kneeland's motion to suppress all evidence obtained from that stop. Because the State has failed to provide us with a record adequate to allow us to consider properly the issues raised on appeal, we affirm the judgment.

The only evidence presented at the suppression hearing was that of Corporal Joel Merry of the Bath Police Department, the officer who stopped Kneeland in his vehicle and placed him under arrest in the early morning hours of January 1, 1988. Merry testified that he was told by another officer that a vehicle that turned out to be Kneeland's had backed into a snow bank in the parking lot of the Holiday Inn and made a wide turn in driving out of the parking lot. Merry then described how he caught up to the vehicle and followed it on several Bath streets, observing it cross the center line into the oncoming lane and operate at a low speed before he pulled the vehicle over.

In granting the motion to suppress, the motion judge commented that "the most damaging evidence would be backing into a snow bank across the parking lot;" that there was a lack of evidence as to the size of the snow bank; and that the lack of testimony as to the condition of the roads precluded an assumption on her part that the roads were icy. The motion judge said nothing about Corporal Merry's personal observations of the operation of Kneeland's vehicle, did not indicate whether she accepted all or part of Merry's testimony and did not give any focused reason for the granting of the motion to suppress. The State failed to request any findings of fact or conclusions of law.

At the hearing on the motion to suppress, the burden was the State's to prove that the stop of Kneeland's vehicle was based on an articulable suspicion that a crime was being committed. *State v. Garland*, 482 A.2d 139, 142 (Me.1984); *State v. Fogg*, 410 A.2d 548, 550 (Me.1980).

■ Whether the officer has a sufficient articulable suspicion to justify a stop is a factual determination for the motion judge to make, and that finding will be disturbed "only if the record presented to us on appeal establishes that the finding is clearly erroneous." *State v. Thurlow*, 485 A.2d 960, 963 (Me.1984). As the appellant, the State has the burden to ensure that that record is sufficient to allow us to properly consider the issues raised. *State v. Marshall*, 451 A.2d 633, 635 (Me.1982).

■ M.R.Crim.P. 41A(d) provides, in pertinent part:

(d) ... If the motion [to suppress evidence] is granted or denied, the court shall make findings of fact and conclu-

sions of law either on the record or in writing.

The language of Rule 41A(d) is mandatory because findings of fact on an order granting or denying a motion to suppress are essential for adequate appellate review of that order. D. Cluchey & M. Seitzinger, *Maine Criminal Practice* § 41A.5, at 41A–11 Vol. 2 (1st ed. 1987).

■ Even though the obligation of the court under Rule 41A to provide findings of fact and conclusions of law is "absolute rather than conditional," M.R.Crim.P. 41A advisory committee note to February 15, 1986 amendment; Cluchey & Seitzinger at 41A–2, as the party responsible for an adequate record, the appellant has the burden to request the court to make findings if none are made or to expand on inadequate findings in order for the record to be meaningful for appellate review. *Marshall,* 451 A.2d at 635.

■ Because the State had the burden of proof on the motion to suppress, in order to prevail in this appeal the State must demonstrate that the motion judge was *compelled* to find that the stop was based on articulable suspicion. *Town of Eustis v. Stratton–Eustis Dev. Corp.,* 516 A.2d 951, 953 (Me.1986); *Luce Co. v. Hoefler,* 464 A.2d 213, 215 (Me.1983).

The entire evidence presented at the motion hearing consisted of the testimony of one police officer. The motion judge was not required to believe that officer's testimony. *State v. Harriman,* 467 A.2d 745, 747 (Me.1983). On this record, we must rely on the comments made by the motion judge at the time the decision was rendered to constitute findings. Those comments were incomplete and unfocused and do not reveal whether she accepted the historical facts testified to by the officer, and from them concluded that the officer's stated suspicion of criminality was not reasonable; or whether she did not believe all or portions of the testimony. Those comments do not "present a clear statement of the basis for the trial court's" decision, essential for our adequate appellate review. *Conger v. Conger,* 304 A.2d 426, 429 (Me.1973).

Before we reach the merits of the State's appeal from a fact-based order granting a motion to suppress, the State must meet its obligation as an appellant to provide us with a sufficient record that includes adequate findings of fact, or at least must take all procedural steps within its power to do so. *Marshall,* 451 A.2d at 635. Because the State has failed to provide such a record here, its appeal must fail. *See State v. Drown,* 447 A.2d 466, 472 (Me.1982).

The entry is:

Judgment affirmed.

McKUSICK, C.J., and ROBERTS and GLASSMAN, JJ., concurring.

WATHEN, Justice, dissenting.

I respectfully dissent. Although I agree that the State should have done more to ensure an adequate record for appeal, I would nevertheless vacate the order of suppression.

At closing time on New Year's morning, January 1, 1988, defendant Richard Kneeland left the Bounty Taverne at the Holiday Inn in Bath. In response to a radio message, Officer Merry, the arresting officer, picked up another officer at the Holiday Inn and was informed that Kneeland's car, had just backed across the Holiday Inn parking lot and struck a snowbank. The second officer also reported that the car made a wide turn as it left the parking lot and that a second car followed it. Officer Merry pursued the cars in his cruiser and quickly caught up with them. He saw Kneeland cross over into the left lane. Both cars travelled at a "noticeably slow" speed. Officer Merry eventually stopped the Kneeland vehicle because he believed the operator was under the influence. At the suppression hearing, after detailing his observations, he stated that he based his belief on the information related by the second officer and on the fact that Kneeland left a drinking establishment at closing time, approximately 2:00 a.m. The District Court judge granted Kneeland's motion to suppress although she characterized the case as "a very close call." In granting the motion, the court referred only to

the fact that Kneeland had backed across the parking lot into a snow bank.

This Court has stated that "[i]n order to initiate an investigation involving brief detention short of a formal arrest, a law enforcement officer must act on the basis of 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Griffin*, 459 A.2d 1086, 1089 (Me.1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). Such facts must give rise to "a reasonable suspicion of criminal activity." *Id.* A mere "inarticulate hunch" will not suffice. *State v. Chapman*, 495 A.2d 314, 317 (Me.1985). In assessing whether a reasonable suspicion existed, "a court must take into account the totality of the circumstances surrounding the stop." *State v. Jarrett*, 536 A.2d 1111, 1112 (Me.1988).

Whether or not the police had the requisite articulable suspicion to justify a vehicular stop "is always a question of fact to be decided by the trial judge who hears the witnesses at the suppression hearing." *State v. Thurlow*, 485 A.2d 960, 963 (Me. 1984). The reasonableness of the officer's suspicion has been characterized as a question of law. *State v. Fillion*, 474 A.2d 187, 190 (Me.1984). The ultimate question of justification combines both legal and factual issues. *Id.* The Law Court will therefore reverse a motion justice's decision regarding the suppression of evidence only if clearly erroneous. *E.g., State v. Thurlow*, 485 A.2d at 963.

Relying on *State v. Caron*, 534 A.2d 978 (Me.1987), the defendant argues in the present case that the motion judge could have properly concluded that Officer Merry had no more than an unsubstantiated hunch that the driver was operating under the influence. I disagree. In *Caron*, we held that the District Court clearly erred in denying the defendant's motion to suppress evidence obtained during an investigatory stop after a Maine State Trooper had observed the defendant straddle the center line of an undivided highway for 25 to 50 yards. We stated that "[t]he observation, even when taken with all rational inferenc-es that can be drawn from it, did not give rise to an objectively reasonable suspicion that criminal activity was involved." *Id.* at 979. Our holding in *Caron*, however, is limited to the particular facts of that case. That decision stands only for the proposition that "[a] vehicle's brief, one time straddling of the center line of an undivided highway is a common occurrence and, in the absence of oncoming or passing traffic, without erratic operation or other unusual circumstances, does not justify an intrusive stop by a police officer." *Id.*

The facts of the present case do not fall within the narrow rule of *Caron*. The arresting officer in *Caron* stopped the defendant solely on the basis of a single straddling of the center line of an undivided highway. Officer Merry, on the other hand, testified to other significant factors which, when taken together, clearly give rise to a reasonable suspicion of criminal activity. On New Year's morning, at approximately 2:00 a.m., Kneeland left a tavern, got into his automobile, backed across the parking lot, and struck an icy snow bank. He made a wide turn as he left the parking lot, and a second vehicle escorted him as he left the lot and as he continued home. Both vehicles drove at an unusually slow rate of speed. At one point Kneeland crossed so far into the left lane that Officer Merry was able to see the entire rear of his automobile from behind the second car. Although we have stated that a trial court is not required to believe uncontradicted testimony, *State v. Harriman*, 467 A.2d 745, 747 (Me.1983), here there is no reason to presume that the motion justice rejected any portion of Officer Merry's testimony. Rather, it appears as though the judge's decision reflects uncertainty engendered by our opinion in *State v. Caron*. *See* Sheldon, *Vehicle Stops And The Maine Constitution*, 3 Me.B.Jour. 182 (1988); Schwartz, *The State of Fourth Amendment Vehicle Stops in Maine After Caron: A Response to Judge Sheldon*, 3 Me.B.Jour. 310 (1988); Moss. *OUI Stops: Proving That Your Suspicion Is Reasonable*, 1 All Points Bulletin, No. 3 at 3 (1988). Taking into account the totality of the circumstances surrounding the stop, *State v. Jarrett*, 536

A.2d 1111, 1112 (Me.1986), Officer Merry acted on at least a reasonable suspicion, if not probable cause, when he stopped Kneeland's automobile. I conclude that the motion justice committed clear error in granting Kneeland's motion to suppress. I would vacate.

HORNBY, Justice, dissenting.

The motion judge did make findings on the record in explaining her ruling. She found that the most damaging evidence to support the investigatory stop was that the vehicle backed into a snowbank across the parking lot. She also found that it did not hit another vehicle; that the dimensions of the lot were unknown; that the lot was narrower than ordinary because of the snowbanks; and that the road conditions were unknown. She therefore granted the motion to suppress. The court apparently finds these findings inadequate for it to address the merits of the State's appeal. Although we, with the leisure of an appellate court, might prefer more comprehensive findings, I believe it is unrealistic to expect the State's lawyer to tell a trial judge that his or her stated findings of fact (required automatically on a suppression motion under M.R.Crim.P. 41A without the State's or the defendant's request) are inadequate, or to expect District Court judges, confronting the volume of cases they do without adequate secretarial assistance, to provide the detail we might prefer. Unless the findings are nonexistent, we should work with what we have. I therefore address the merits.

Upon review of the District Court's findings, like Justice Wathen I believe that the District Court's order of suppression should be vacated. In light of the confusion State v. Caron, 534 A.2d 978 (Me. 1987), has generated, it was undoubtedly Caron (decided only two to three months before this suppression order) that led the District Court judge to ignore the hour, the date and the driving behavior in this case, and to focus instead solely upon the parking lot incident. I agree with Justice Wathen that the facts here are stronger than those in Caron and he has made a persuasive argument why a trial judge might find an "articulable suspicion." I file this separate dissent, however, because deciding the case on the basis that an articulable suspicion had to be found and purporting to preserve Caron continues to place this Court in the improper role of factfinder. In Caron we said that a trial court could not find a reasonable basis for a stop on a deserted road, after midnight, with the car in question straddling the center line for 25 to 50 yards. Id. at 979. If, as Justice Wathen says, a trial judge must find a reasonable basis for a stop on New Year's morning at 2:00 A.M., where the car backs into an icy snowbank in a parking lot of a bar, and drives slowly, crossing the center of an unlined road, what is left to a trial judge (whose decisions we say will be reversed only if they are clearly erroneous)? Is it only circumstances between these two sets of facts?

Caron, in my view, was wrongly decided. With the deserted road, the hour (after Friday midnight, according to the calendar), and the crossing of the center line, a police officer may have had an objectively reasonable suspicion that a driver was dozing or operating under the influence. Or he may not have. The point is, it was not for us to say as a matter of judicial notice that circumstances like that occur so frequently without cause for concern that they cannot justify a police stop. I do not believe that Caron can be salvaged by limiting it to its facts. That only invites lawyers to try to show that their case, or a part of it, is like Caron and prolong the uncertainty and needless lawyering the case has already provoked. See, e.g., State v. Pelletier, 541 A.2d 1296 (Me.1988); State v. Garrity, 548 A.2d 1389 (Me.1988); State v. Modery, 549 A.2d 741 (Me.1988); State v. Beaulieu, 550 A.2d 68 (Me.1988); State v. Lewry, 550 A.2d 64 (Me.1988); State v. Poole, 551 A.2d 108 (Me.1988); State v. Degen, 552 A.2d 2 (Me.1988). See also Sheldon, Vehicle Stops and the Maine Constitution, 3 Me.B.Jour. 182 (1988); Moss, OUI Stops: Proving That Your Suspicion Is Reasonable, 1 All Points Bull., No. 3 at 3 (1988). But see Schwartz, The State of

*Fourth Amendment Vehicle Stops in Maine after Caron: A Response to Judge Sheldon,* 3 Me.B.Jour. 310 (1988).

Unlike Justice Wathen, therefore, I do not agree that the district judge is required to deny the suppression motion. Cross-examination, for example, revealed that the road curved during the police officer's pursuit of the vehicles and it would therefore be legitimate to conclude that he saw the entire rear end of the first vehicle not because it had crossed far over the center line, but because of his line of sight on the curve. He testified on cross-examination, moreover, that given the presence of snowbanks it would be difficult for a vehicle to stay out of the center of the road in any event. The trial judge should be permitted to re-evaluate all this evidence without *Caron*'s distorting effect.

Accordingly, I would overrule *Caron* and vacate and remand for reconsideration by the District Court.